FRANK THRIFT v. ELIZABETH CITY.

(Decided May 26, 1898.)

*Municipal Corporation—Contraction of Debt—Unusual Tax Levy—Necessary Expenses—Water-Works—Invalid Contract—Constitutional Law—Exclusive Privileges—Perpetuities.*

1. The establishment, maintenance or rental of water-works is not a necessary municipal expense within the meaning of Section 7, Article VII of the Constitution, so as to permit the levy of a tax beyond that authorized by the Charter or the incurring a debt for the purpose, without proper legislative authority and the approval of a popular vote.

2. There is no difference between making a contract binding a municipality for a long period of years, requiring the payment of a large yearly sum, and the issuing of bonds of the municipality to run a like period.

3. A contract or ordinance of a City attempting to grant any exclusive privilege for the construction of water-works, &c., and the exclusive use of its streets, &c., for any purpose, comes within the prohibition against monopolies and perpetuities contained in Section 31, Article I of the State Constitution, even though such grant is made as an incentive or inducement to the establishment and maintenance of works contributing to the health, comfort or convenience of the public.

CIVIL ACTION to enjoin the execution of a contract by the defendant corporation with John Orlando White for a water supply for the town of Elizabeth City, heard on complaint and answer, used as affidavits, before BROWN, J., at Fall Term 1897, of Pasquotank Superior Court. The injunction was made perpetual and defendant appealed.

*Messrs. Shepherd & Busbee*, for plaintiff.
*Mr. I. M. Meekins*, for defendant (appellant).

DOUGLAS, J.: This is an action brought to enjoin the Board of Commissioners of Elizabeth City from entering into a contract with the defendant White for a water supply for the town and its inhabitants for the term of thirty years.

Sections 1 and 7 of said contract are as follows:

"Section 1. Be it ordained by the Town Commissioners of the Town of Elizabeth City, that the exclusive privilege be and is hereby granted to the said John Orlando White, his associates or assigns, for a term of thirty years from and after the passage and approval of this Ordinance, to construct and maintain water works within the Corporate limits of the town of Elizabeth City, North Carolina, for supplying said town and its inhabitants with water for public and private uses; and to use the streets, alleys, side-walks, public grounds, streams and bridges of said town of Elizabeth City embraced within the entire territory of the present corporate limits of the town, and all territory under their jurisdiction, and also whatever other territory and additions may at any time hereafter be annexed to said corporate limits, and become a part and portion thereof, for the purpose of placing, constructing, embedding, laying, taking up and repairing pipes, conduits, mains, buildings, machinery, hydrants and other structures, appliances and other devices, needful and requisite for the applying, conducting and service of water to said town and its inhabitants."

"Section 7. In consideration of the advantages, conveniences and benefits which may result to said town and its inhabitants from the construction, maintenance and operation of said water works and of the water supply hereby secured for public and private uses, and as an incentive and inducement for the said grantee, his

associates or assigns, to enter upon the construction of said water works, the exclusive franchise and license hereby granted to and vested in the said John Orlando White, his associates or assigns, shall remain in full force and effect for the full term of thirty years from the date of the completion of said water works. And the said town of Elizabeth City does hereby agree to rent of said grantee, his associates or assigns, for the use and purposes hereinafter mentioned, the seventy (70) hydrants hereinbefore mentioned for and during the term of thirty years, beginning at the time of the completion of said water works.    *   *   *    Said town of Elizabeth City agrees to pay the said John Orlando White, his associates or assigns, rent for the use of said seventy (70) hydrants, the sum of forty dollars each, yearly, or, for the whole seventy hydrants, the sum of two thousand eight hundred dollars yearly, which rent shall be paid in equal semi-annual instalments on or before the last day of June and December in each and every year during said term."

It is admitted that there is no express statutory authority for such contract, and no legislative authority whatever, other than the section in the town charter authorizing the levy of taxes for general purposes, not to exceed seventy-five cents on the hundred dollars valuation.

The plaintiff contends "that the ordinance in question is a contract by which the defendants pledge the faith and credit of the town within Section 7, Article VII of the State Constitution, and that the same is not a necessary expense within the said constitutional provision;" and that no grant of the exclusive use of the streets can be made "without express legislative authority."

The defendants contend that the rental of an adequate water supply is such a necessary expense of the ordinary city government as not to require a submission to a popular vote of the inhabitants.

It is apparently admitted that the rental can be paid from the ordinary tax levy within the limit allowed by the charter..

The Court below rendered the following judgment: "The Court is of the opinion: 1st. That water works are not a necessary expense within the meaning of the Constitution. (*Shepard* v. *Charlotte*). 2nd. That it is beyond the power of the defendants to levy an increased tax for the purposes set out in the pleadings without further legislation approved by a majority of the qualified voters. 3. That it is not within the power of the defendants to bind the corporation for thirty years rental. It is adjudged upon the pleadings that the defendant be perpetually enjoined against proceeding further in the execution of said ordinance, or accepting bond and paying out the revenues of the town under said ordinance, and from levying any tax in furtherance of, or discharge of such obligation growing out of said ordinance, or doing any of the acts or things set out in paragraph 10 of the complaint."

We see no error in the judgment. It may now be taken as well settled by this Court that water and lights are not in themselves such necessary expenses of a town as to authorize an unusual levy of tax, or the incurring of a debt without proper legislative authority and the approval of a popular vote. *City of Charlotte* v. *Shepard*, 120 N. C., 411, and S. C. on rehearing at this term; *Mayo* v. *Commissioners*, at this term. In the consideration of this question we see no substantial difference between issuing bonds to run for thirty years, and the

making of a binding contract for the same period requiring the town to pay a large yearly sum, which cannot be reduced, but which may be greatly enlarged. In *Mayo* v. *Commissioners, supra,* it was held that the town of Washington could not issue, without legislative authority and popular ratification, twenty thousand dollars of bonds running thirty years and bearing not more than 6 per cent. interest; and yet it is contended that the town of Elizabeth City can, without either such authority or ratification, bind itself for the same period of time to pay an annual rental, which can never be less than six per cent. on forty-six thousand six hundred dollars.

In our opinion both come equally under the same principle of public policy, and within the constitutional prohibitions.

We do not wish to be understood as being opposed to water works or electric lights, or any other modern conveniences that may conduce to the growth and development of our towns, or the health and comfort of their inhabitants. Nor is there any inherent objection to towns owning and operating their own water works and light plants, whenever it is the will of their people properly expressed under valid legislative authority. The experience of the past has shown the wisdom of the constitutional restrictions; and whether wise or not, it is our duty to enforce them whenever they apply.

There is another fatal defect in the proposed contract, and, as it is presented in the record, we feel called upon to decide it in justice to the contracting parties. It would probably be included in any new contract, and might be relied on as having received the apparent approval of our silent acquiescence. Those provisions of the ordinance granting the *exclusive* privilege to construct and maintain water works within the corporate

limits of the town, and the *excluisve* use of its streets, alleys, side-walks, public grounds, streams and bridges, come within the condemnation of Section 31, of Article I of the Constitution of this State, which declares that "Perpetuities and monopolies are contrary to the genius of a free State and ought not to be allowed." A monopoly need not be a perpetuity, nor is a perpetuity necessarily a monopoly; but both, existing either jointly or severally, are within the constitutional prohibition. There can be few if any monopolies more dangerous in their tendencies, and unjust and harmful in their results, than those that pertain to municipal corporations. In the present age of activity in scientific research and wonderful development in mechanical inventions and discoveries, it is highly improbable that any present system will long remain the best. Improved methods and cheaper appliances will result, and yet the town would deliberately surrender to a private individual its highest attributes of delegated sovereignty, and would place beyond its power for nearly a generation all opportunity of securing for its citizens the benefits and improvements of a progressive age.

It not only would be bound for its annual rental, which would always increase with the extension of its territory and the growth of its population; but its citizens, deprived of every chance of obtaining water from any other source, would be compelled to pay exorbitant charges, or be cut off at the will of the company. The courts might afford relief, but it is the better public policy to encourage competition instead of fostering monopolies, and thus as far as possible avoid the necessity of judicial interference.

All authorities hold that no such exclusive privilege can be granted by a municipal corporation without ex-

press legislative authority, and this of itself would settle the case at bar; but we feel compelled to go further and say that, while the point is not now directly before us, we do not wish to be understood as conceding the power of the Legislature itself to grant such exclusive privileges. In our opinion, they come directly within the meaning of monopolies, as construed in the light of our institutions, the genius of our people and the spirit of our laws. We are not inadvertent to some decisions to the contrary in other jurisdictions, but in all of them, where the power is admitted, it is strictly construed. As was said by Chief Justice Taney, in *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420, 548: "The continued existence of a government would be of no great value if, by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation; and the functions it was designed to perform transferred to the hands of privileged corporations." In some of them, as in *Memphis* v. *Water Co.*, 5 Heisk., 495, 529, the error has apparently arisen from adopting the substance of Lord Coke's definition of a *monopoly*, as "an exclusive right granted to a few of something, which was before of common right."

Our theory of government, proceeding directly from the people and resting upon their will, is essentially different, at least in principle, from that of England; and common law maxims and definitions, framed while the judges were still under the spell of the Feudal System, must be construed by us in the light of changed conditions. Under our system of government, all rights and privileges are primarily of common right, unless their restraint becomes necessary for the public good; and municipal corporations are beginning to be considered rather in the light of public agencies.

Section 37 of Article I of the Constitution, the Declaration of Rights, declares that : "This enumeration of rights shall not be construed to impair or deny others retained by the people; and all powers not herein delegated remain with the people."

We do not mean to say that any citizen has a right to dig up a public street for the purpose of laying water pipes without permission from the city, as this would seriously interfere with its primary use; nor is a municipal corporation compelled to give to every one, that may apply, authority to establish a system of gas or water works, or electric lights. All that the law says is that neither the corporation nor the Legislature shall deprive itself of the power of providing for the future necessities of the people, and thus "disarm themselves of the powers necessary to accomplish the ends of their creation."

We do not regard this as a new principle, but simply as the legitimate result of what has already been said by this Court. *McRee* v. *Railroad*, 47 N. C., 186, 189; *Simonton* v. *Lanier*, 71 N. C., 498; *Washington Toll Bridge Co.* v. *Commissioners of Beaufort*, 81 N. C., 491, 498.

It is stated in the ordinance now under consideration that this exclusive privilege is granted as an "incentive and inducement" for the construction of said water works, and it is argued that we should not drive away foreign capital by too strict a legal construction, but should rather encourage its investment in our State. All the encouragement that we can offer is the fullest protection of the law, meted out with evenhanded justice.

But it is said we should be influenced by motives of public policy. Even so, we see no true principle of

public policy which requires us to follow the dangerous experiment of sowing the dragon's teeth in the hope of reaping a golden harvest. The judgment is affirmed.

Affirmed.