291 P.2d 282

Lew COX, Willard Walters, Max Peterson, William McAughey, A. R. Dick, Howard B. Hildreth, Howard Lee, Harold Anderson, and R. Stanford Pugmire, and all those other persons similarly situated, Plaintiffs-Respondents,

v.

CITY OF POCATELLO, Ray Hunter, Harry Yearsley, Steve Rhoads, Fred Burton, Ezra Hawkes, Grant Stowell and Mel Deaton, Defendants-Appellants.

No. 8244.

Supreme Court of Idaho.

Dec. 7, 1955.

Ben Peterson, City Atty., Pocatello, for appellant.

Anderson & Anderson, Pocatello, for respondent.

SMITH, Justice.

Respondents in a single action seek mandate to compel appellants, during irrigation seasons to permit the flow of respondents' allotted irrigation water through a ditch or canal extending southerly through the townsite of the City of Pocatello, and to deliver the water to respondents' ditch at the city's south boundary; and for recovery of damages to their gardens and crops, allegedly caused by the city's refusal so to deliver the water during the forepart of the 1952 irrigation season.

The action was tried upon a stipulation of facts, evidence adduced and affidavits filed by stipulation.

Respondents' predecessors in interest acquired rights to the use, for irrigation purposes, of three acre feet of water per acre of their lands irrigated. They acquired those rights, dating variously during the years 1913–1918, under contracts with the United States, acting through the superintendent of irrigation of the U. S. Indian service, as authorized by the Department of the Interior. Those contracts evidenced a plan of sale and distribution of waters for use for agricultural purposes under

Fort Hall Irrigation Project, constructed and operated on Fort Hall Reservation.

The stipulation of facts sets forth a contract dated June 3, 1922, between the City of Pocatello, and named landowners of whom respondents are successors in interest; that Fort Hall Irrigation Project is obligated to deliver the three acre feet of water per acre, measured at the city's north boundary where a part of the Project's distribution system enters the city limits; that from that point, a city-owned ditch extends southerly through the city, "which receives and conveys water distributed to it as a part of the Fort Hall Irrigation Project and is known as 'Lateral Y'."; that it is necessary that the landowners use the city ditch thereby to convey such irrigation water to their lands.

The contract provides in effect that, in consideration of payment to the city by the named landowners of an annual charge, called rental, of 50 cents an acre of their land irrigated by water carried through the ditch, and the landowners' promises to provide a ditch or get-away for excess city water, and to save the city harmless from liability for damage caused by such excess water to property situate south of the city, the city agrees, each irrigation season, to receive at its north boundary into the city ditch, the landowners' irrigation water as delivered by Fort Hall Irrigation Project, and to conduct such water through its townsite and deliver it to the landowners' ditch at the city's south boundary.

The contract does not provide a date of termination.

The parties stipulated that respondents have paid to the city the sums of money provided in the contract.

The stipulation sets out that the city was to convey to 141.32 acres of lands, owned by the original landowners named in said contract, water as allotted by Fort Hall Irrigation Project, distributed over the irrigation season of 150 days, at the rate of three acre feet of water per acre which amounts to 1.42 cubic feet per second; that by the spring of 1952 the original acreage of 141.32 acres had decreased, by relinquishment of rights by successors in interest to the original named landowners, to 43.63 acres which receive water under such irrigation project through the city ditch.

The city has conveyed the irrigation water (three acre feet per acre) through the city ditch and delivered it to the extension of said ditch at the city's south boundary, for use on lands of respondents, during each irrigation season, from the inception of the contract until the spring of 1952, by means of a 36-inch concrete pipe laid along the streets of the city. The parties stipulated that such pipe interfered with construction of "curbs and sidewalks, and streets upon a portion of North 14th Avenue in the City of Pocatello." During April 1952, the city, in order to improve certain of its streets, replaced 180 feet of

the 36-inch pipe with 14-inch pipe. This resulted in a decreased flow of water through the city ditch and in a decreased amount of water delivered for use on respondents' lands as compared to deliveries made during previous years.

Prior to June 4, 1952, no actual measurement was ever made of the water so conveyed and delivered; but, as stipulated, during the irrigation season, water in excess of three acre feet per acre was delivered to respondents, and those similarly situated, or their predecessors. Such portion of the stipulation is interpreted as referring to irrigation seasons prior to the year 1952.

The parties then stipulated as to the 1952 season, that the city did not receive any water from Fort Hall Irrigation Project May 27, May 31, and June 1, 1952, nor did respondents; that the city delivered to respondents and those similarly situated, water measured in cubic feet per second of time on dates as follows:

| 6-4-52 to 6-19-52, inclusive, each date being set forth, | .70 to 2.56, varying on the different dates, |
|---|---|

and to the ditch of respondents, water so measured on dates as follows:

| 6-19-52 to 6-25-52, inclusive, | 1.8 approximately, |
|---|---|
| 6-27-52 to 9-23-52, inclusive, | 3.15. |

About June 27, 1952, the city installed a pump near its south boundary and, by pumping water into the ditch, augmented the flow to the second feet measurement then and thereafter shown. No damage thereafter occurred to respondents' gardens and crops.

June 3, 1952, respondents' counsel demanded of the city in writing in effect, that it continue to live up to its obligation to deliver the irrigation waters under the contract of June 3, 1922; that its failure so to do already had caused considerable damage and that if the water be not delivered in two days, the water users would hold the city strictly accountable for all resultant damages. The city commission at its meeting of June 5, 1952, caused that letter to be read and filed.

June 12, 1952, the five respondents, Cox, Walters, Peterson, McAughey and Lee, filed their verified petition for a writ of mandate to require the city to convey through its city ditch and deliver respondents' irrigation water, alleging that June 5, 1952, the city refused to deliver the water; each claimed crop damage suffered due to lack of water. Subsequently, December 3, 1952, two additional respondents, Hildreth and Dick, joined in the action and thereupon the seven respondents filed their verified amended petition for writ of mandate; each claimed crop damage in substantially the same form as the original petition.

December 20, 1952, appellants by their answer acknowledged that the City of Pocatello entered into the contract of June

3, 1922, but alleged invalidity of the contract; they denied the balance of respondents' amended petition, and set out that respondents had not filed any claim for damages against the city as required by I.C. sec. 50–162.

The seven respondents, Cox, Walters, Peterson, McAughey, Dick, Hildreth and Lee, each testified as to his ownership or occupancy of certain lands for which, prior to the 1952 irrigation season, he had received allotted irrigation water from Fort Hall Irrigation Project, delivered by the city; also as to his crop damage due to lack of water during the 1952 irrigation season.

The parties thereafter stipulated into the record the claims for damage in affidavit form, of respondents Harold Anderson and H. Stanley Pugmire, in which each sets forth his ownership of certain lands situate south of the City of Pocatello, for which he receives the irrigation water from Fort Hall Irrigation Project, his crops grown on the lands, and his claimed crop damage due to lack of water during the 1952 irrigation season; also stipulated like testimony and objections to those claims, as relate to the claims of other respondents.

The parties also stipulated into the record, the affidavit of Mr. Draper, project manager of Fort Hall Irrigation Project, relating to the time when such irrigation water is normally made available during the irrigation season, and when made available during the 1952 irrigation season for the Pocatello lateral or ditch.

The trial court ruled in favor of respondents; particularly, the court ruled that appellants are obligated by the agreement of June 3, 1922, to convey respondents' irrigation water through the city ditch at times when the water is delivered by Fort Hall Irrigation Project.

The trial court's decree requires appellants to deliver three acre feet of water per acre to respondents through the city ditch extending southerly through the City of Pocatello, whenever the water is received from Fort Hall Irrigation Project in the ditch at the city's north boundary; also, if the ditch be not of sufficient capacity to carry three acre feet of water per acre for respondents, that appellants supplement said flow of water by pumping into respondents' ditch at or near the south boundary of the city, a sufficient amount of water to place in respondents' ditch at the city's south boundary, the three acre feet of water per acre, during each year.

The trial court also ruled that by reason of the arbitrary action of appellants in obstructing the flow of water through the city ditch during the spring of 1952, which resulted in failure of or damage to respondents' crops, the city is liable in damages to each respondent in amounts given, together with interest. The court entered judgments accordingly.

Appellants assign error of the trial court in according validity to the contract of June 3, 1922.

Appellants interposed the defense that the contract is ultra vires since it attempts to obligate the city perpetually.

The contract does not provide a period of duration other than in perpetuo by implication; nor for any alteration of the contract charge of 50 cents an acre, called rental.

The parties up to the spring of 1952 had recognized the obligations of the contract for approximately 30 years. During such time the city had delivered to respondents' predecessors and to respondents their allotted irrigation water through the city ditch for a charge, called rental, of 50 cents per acre of land irrigated by waters delivered through the city ditch. The record shows that then, commencing with and during the forepart of the irrigation season of the year 1952, the city, without notice to respondents, obstructed the flow of respondents' irrigation water with resultant failure of or damage to respondents' gardens and crops.

Nothing is contained in Idaho's Constitution or statutes limiting the period of time for which a municipal corporation may bind itself by contract, except I.C. sec. 30–801, which does not have application here.

The rules are generally stated at 63 C.J.S., Municipal Corporations, § 979 b, pp. 533–534, as follows:

"In the absence of limitation either by charter or general statute, contracts have been sustained as valid when made for a reasonable term of years, three, five, ten, fifteen, twenty, twenty-one, twenty-five, thirty, and even thirty-one, years being held not unreasonable in view of the expense of preparation. However, in other cases twenty-five or thirty years have been held an unreasonable term for a grant of an exclusive privilege by a municipality; * * *. Even in the exercise of their proprietary functions, municipalities may, in the absence of express statutory permission, contract only for a reasonable time.

"Contracts to continue for an unlimited time, if construed to continue in perpetuo, are generally considered invalid, although some courts have held such contracts valid in the absence of any constitutional limitations. Contracts for an indefinite time are sustained where construed as continuing in force only at the will of the parties or for a reasonable time only, and in some jurisdictions the reasonable time for which such contracts are allowed to run is determined by analogy to constitutional provisions limiting the terms of franchises."

See also Thrift v. Town Com'rs of Town of Elizabeth City, 122 N.C. 31, 30 S.E. 349, 44 L.R.A. 427; Westminster Water Co. v. Mayor, etc., City of Westminster, 98 Md.

551, 56 A. 990, 64 L.R.A. 630; Daly v. Stokell, Fla., 63 So.2d 644; Horkan v. City of Moultrie, 136 Ga. 561, 71 S.E. 785; City Council of Augusta v. Richmond County, 178 Ga. 400, 173 S.E. 140; Griffin v. Oklahoma Natural Gas Corporation, 10 Cir., 37 F.2d 545; Gardner v. City of Dallas, 5 Cir., 81 F.2d 425; Stevenson v. City of Abilene, Tex.Civ.App., 67 S.W.2d 645.

We hold the general rule applicable, under the circumstances shown here, that the contract, having an indefinite term, must be construed as an existing contract, to remain in force at the will of the parties, or for a reasonable time. The city cannot be allowed to terminate the contract except upon due and timely notice to respondents, with opportunity afforded them to be heard on any asserted right of the city to declare the contract at an end, as well as opportunity afforded them to protect their vested rights to, and resulting from and dependent upon, the use of their allotted irrigation water. If the contract be so terminated, respondents still would be entitled to delivery of their irrigation water during irrigation season through the city ditch, or other waterway the city may select at its expense, with the right in the city to impose and collect a reasonable charge for maintenance, to be determined by the city from time to time or by negotiations with the parties interested.

Appellants assign error of the trial court in ruling in effect that respondents are entitled to have their irrigation water conveyed by the City of Pocatello by use of the city ditch or other means. They contend that under no theory are respondents entitled to have their irrigation water flow through the townsite of the city even though they are willing to pay reasonable maintenance charges to the city.

Appellants strenuously advance the premise that the city may establish, lay out, repair and otherwise control and maintain streets and alleys, I.C. secs. 50–1104, 50–1121, 50–1123, 50–1141, as well as alter or otherwise control sewers and drains, I.C. sec. 50–144; also, that the city has unlimited control of the streets and alleys to the exclusion of any permissive use thereof which may exist in favor of respondents; citing Splinter v. City of Nampa, 70 Idaho 287, 215 P.2d 999, 17 A.L.R.2d 665, and Boise City v. Sinsel, 72 Idaho 329, 241 P.2d 173.

The assignment is not well taken since respondents do not and cannot assert any permissive or other use or occupancy or any control or right of control, nor have they ever in anywise obstructed, any of the city's streets or alleys, or interfered with any of the city's construction. Respondents assert only the city's duty to allow transmission of respondents' irrigation water through the city's townsite, via the city ditch or other waterway as the city may select, either pursuant to the terms of the contract and upon payment to the city of

the amounts therein provided; or as respondents stated in oral argument, if the contract should become terminated, then upon payment by respondents to the city of reasonable maintenance charges.

Moreover, the city, in the exercise of its control over property dedicated to public use, in and upon which the city ditch is situate, may at its expense and in its sole discretion, alter or change the channel of the waterway which conducts respondents' irrigation water through the city's townsite, I.C. sec. 50–1112.

Next, appellants contend that the city ditch became a nuisance in that, as stipulated, the 36-inch concrete pipe "did obstruct and interfere with the construction of curbs and sidewalks, and streets upon a portion of North 14th Avenue." It does not follow that the city ditch is or was a nuisance merely because of such reason assigned. Appellants admitted that they remedied the complained of obstruction by replacing the 36-inch pipe with a 14-inch pipe laid along a portion of the course of the city ditch; but, as respondents' counsel aptly stated, appellants could have placed the 36-inch pipe in the ground to a sufficient depth so as to overcome the complaint of surface obstruction, or they could have installed an additional smaller pipe in the particular locality where they installed but one such pipe, in either case thereby to conduct a larger flow of the irrigation water. Appellants do not otherwise assert nuisance, and the record is devoid of any showing that the city ditch is a nuisance in fact or per se. The power of a city to declare, prevent or abate a nuisance does not include the power to declare anything a nuisance which is not one in fact nor one per se. City of Twin Falls v. Harlan, 27 Idaho 769, 151 P. 1191.

Appellants assign error of the trial court in finding that respondents are entitled to damages, asserting that respondents failed to file with the City of Pocatello any claim for damages as required by I.C. sec. 50–162 and thereby deprived the city of the statutory protection which such section of the statute affords.

The Legislature enacted I.C. sec. 50–162 as Idaho Sess., Laws 1913, c. 74, sec. 28, p. 312, as part of an act providing for the organization, government and powers of cities of the first class. Such section of the statute reads:

"All claims for damages against the city must be filed with the city clerk within thirty days after the time when such claim for damages shall have accrued, specifying the time, place, character and cause of said damage. No action shall be maintained against the city for any claim for damages until the same has been presented to the city council, and until sixty days have elapsed after such presentation. The allowance of any and all damage claims

against the city shall be by ordinance, and not otherwise."

The letter of respondents' counsel of June 3, 1952, (Exhib. B), demanded the continued delivery of the irrigation water and referred to the contract of June 3, 1922, which sets forth the land descriptions; also sets out that damages for failure to deliver the water had accrued and, should the city fail to deliver the water in two days that it would be held strictly accountable for resultant damages. Such letter apprised the city and its officers of the time, place, character and cause of claimed damage. The city commission made no response to that letter, although at its regular meeting held June 5, 1952, it caused the letter to be read and filed. Thereafter, December 3, 1952, seven of respondents in their amended verified petition for a writ of mandate, each set forth his claim for damages against the city; as to time, the 1952 irrigation season; the place, his land; the character, loss of certain designated and amount of garden and other crops; the cause, lack of irrigation water brought about by the city's failure to convey through the city ditch and deliver to respondents' ditch, the said irrigation water; each such respondent set forth the amount of his alleged damage. Later, the two remaining respondents were permitted to file in the proceeding their claims in affidavit form, each likewise setting forth the time, place, character, cause and amount of damage.

Appellants, under such circumstances were afforded all the protection contemplated by I.C. sec. 50–162 within a short time after respondents had conformed substantially to the legal requirements thereof, i. e., the city and its officers were afforded ample opportunity to investigate respondents' alleged damage claims, thereby to determine the city's liability with respect thereto.

The purpose of I.C. sec. 50–162 is to give the city notice of the claim and the consequent opportunity to ascertain the extent of damage, investigate the cause and determine the liability of the city. The statute does not require a statement of circumstances as to show an absolute liability but rather, of such information that the city authorities may be able to make a full investigation of the cause of the damage and determine the city's liability therefor. The object of the statute must be kept in mind and should not be given a construction as will defeat the ends of justice. Dunn v. Boise City, 45 Idaho 362, 262 P. 507. Appellants' said assignment is not well taken.

Appellants lastly assign error of the trial court in ruling that in April or May, 1952, the city by willful action (the ruling is arbitrary action) interfered with the flow of respondents' irrigation water thereby depriving respondents of the use thereof. They assert the insufficiency of the evidence in support thereof, and contend that the evidence establishes only the

fact that at some time the city replaced in the city ditch a portion of the 36-inch pipe with 14-inch pipe, without any resulting damage to respondents.

The affidavit of Mr. Draper, project manager of Fort Hall Irrigation Project for 16 years, shows that normally, the irrigation water was made available for the Pocatello lateral commencing May 5th to 10th of each year; that in 1952 the water for such lateral was not made available until May 24th because the lateral was blocked and could not receive water; that said water, had it been turned in, would have overflowed the lateral and, that *if the lateral had been capable of receiving said water in Pocatello, the water would have been made available to its users.*

The stipulation shows that during April, 1952, repair work in and upon the streets of Pocatello was in progress including the matter of tearing up 180 feet of the 36-inch pipe and replacing it with 14-inch pipe.

The testimony of Mr. Fuger, the city's water superintendent, shows that the city, prior to May 24, 1952, had torn up the city ditch a distance of about one and one-half blocks; that the city substituted a section of the 36-inch pipe with 14-inch pipe; also, that the city ditch was not in condition to carry water prior to May 24, 1952. He knew that water was in the city ditch May 25th but had no record of whether water went into the ditch from then on to June 6th.

The stipulation of the parties sets forth that no measurement of water in the city ditch was made prior to June 6th, which was after respondents' counsel had made a demand on the city to deliver the water, and just prior to the time the original petition for writ of mandate was filed, and which sets forth the damage claims of the first five respondents.

The testimony of each respondent, as to when and whether, during the 1952 irrigation season, he received his irrigation water through the ditch at his outlet, is as follows: Cox (the water enters his land at the city limits), Walters and Peterson, during the latter part of June when the city installed the pump; McAughey, the latter part of June; Dick, about June 23rd; Hildreth, about June 11th or 12th; Lee (whose land is within the city limits) about a week or two after the people above him got their water; Anderson and Pugmire, no water during the season.

Respondents also testified as to cleaning their ditch where needed.

Respondents further testified in effect that their crop damages commenced during May, 1952, in some instances about or shortly after May 1st, and in others not later than May 15th, and continued due to lack of irrigation water.

The record further shows that during the spring of 1952 respondents put in gardens and crops, expecting to have delivered

to their ditch their irrigation water; whereas, in no instance does the record show that the city gave any notice to any respondent, water user, that it intended to cease for a time, or otherwise interfere with, the conveyance of such water.

While appellants stress the point that respondents did not have a watermaster or ditch rider to look after the distribution of the water, the record shows that the city always had delivered plenty of water to respondents during irrigation seasons of previous years, and never had they needed the services of a ditch rider; that the spring of 1952 they planted and attended their crops, looking forward to the usual agricultural use of their irrigation water which, without warning the city failed to deliver through the city ditch or otherwise deliver at the times when needed to prevent loss of or damage to the crops. Under such circumstances the services of a ditch rider would have been useless.

Further, instead of obstructing the flow of respondents' irrigation water in the city ditch, had the city observed its mandatory duty of altering or changing the channel of such waterway thereby to convey the water through the city's townsite, or otherwise arranged for its delivery to respondents' ditch, in accordance with I.C. sec. 50–1112, there would not have occurred the arbitrary interference with and taking of the vested water rights of respondents as here shown, with the consequent damages to gardens and crops.

The May 3, 1954 stipulation of facts sets forth various measurements of water, commencing June 4, 1952, and thereafter during that irrigation season, delivered through the city ditch, which if considered alone could be subject to interpretation unfavorable to respondents; whereas, each respondent testified in a manner inconsistent with the stipulation, thereby indicating that he did not choose to rest thereon. A stipulation is not necessarily binding upon the parties as to the conclusions of law embraced therein. Lyon v. Robert Garrett Lumber Co., 77 Kan. 823, 92 P. 589; In re Davidson's Estate, 21 Cal.App. 118, 131 P. 67; Hart v. Turner, 39 Idaho 50, 226 P. 282; Gorman v. Wilson, 186 Okl. 435, 98 P.2d 600; Hahn v. National Casualty Co., 64 Idaho 684, 136 P.2d 739.

It is implicit in the decree that respondents are required to pay to the city the charges as fixed by the contract so long as the contract remains in force, in return for the performance required of the city by the decree. The decree as so construed is affirmed.

The judgments of the trial court for damages in favor of respondents against appellants are affirmed.

Costs to respondents.

TAYLOR, C. J., and KEETON, PORTER and ANDERSON, JJ., concur.