456 P.2d 766

Carol **JORSTAD**, as guardian ad litem of Gary Kopf, Dianne Kopf, Karen Kopf, Keith Kopf, Roy Kopf, Jody Kopf and Sally Kopf, all minors, Plaintiffs-Respondents,

v.

**CITY OF LEWISTON**, Defendant-Appellant.

No. 10142.

Supreme Court of Idaho.

July 9, 1969.

William A. Stellmon and Jerry V. Smith, Lewiston, for appellant.

Leslie T. McCarthy, Lewiston, and Michael Hemovich and John A. Schultheis, Spokane, Wash., for respondent.

SPEAR, Justice.

This is an appeal from a jury verdict in favor of Carol Jorstad as guardian ad litem for the children of Morris Koph, deceased. A judgment was obtained against the City of Lewiston on a cause of action arising out of an intersection accident, as a result of which plaintiff's decedent was killed.

In the early morning hours of January 20, 1966, Morris Kopf, driving alone in a 1961 Rambler convertible northbound on Thain Road as it merged into 21st Street in Lewiston, Idaho, struck a concrete divider separating the two northbound lanes from the two southbound lanes and turn bays channeling intersecting eastbound traffic from 19th Avenue onto 21st Street. After striking the divider, Kopf's vehicle crossed over the divider and traveled down the north turn bay and outside southbound traffic lane, then crossed back across the northbound lanes into a curb on the east side of 21st Street, over an embankment, through a fence, across a gully, and finally slammed into an embankment, landing on its wheels in a cleared area above the embankment. The distance from the point of impact to the resting point of the car was 423 feet. Kopf was thrown from the vehicle and after the accident was found approximately 30 feet north of the car. This intersection was in the process of being reconstructed and apparently there were warning devices on both sides of it to warn motorists that construction was under way. However, there is a dispute as to whether the warning devices that were present were adequate. A flashing light that had been previously placed in the concrete triangle that decedent struck, was not there at the time of the accident. Nor was the movable safety cone warning device placed in the triangle as it should have been.

It is respondent's contention that this entire traffic control device was improperly designed, and improperly constructed. The plan was not designed by an engineer. The construction was not conducted under the supervision of a licensed engineer and it

apparently was a rather hurried development necessitated by the sudden increase in traffic flow from a large new shopping center south of 19th Avenue.

Appellant contends that the warning devices were adequate. It further contends that the decedent was under the influence of alcohol at the time of the accident. There is some testimony in the record to the effect that the decedent was intoxicated to the point of staggering and speaking in a slurred manner. On the other hand, respondent introduced testimony to the effect that, in the opinion of several witnesses who had observed him, the decedent was sober.

Appellant raises twenty-three assignments of error. The first five assignments are essentially objections to the sufficiency of the evidence to sustain the verdict. Appellant relies partly on undisputed evidence that the decedent was observed drinking beer at some time during the course of the evening, thus raising the issue of negligence as a matter of law. Appellant also relies heavily on another negligence per se argument, contending that the decedent must have been traveling between 50 and 75 miles per hour when he struck the traffic divider. This was contributory negligence as a matter of law, according to appellant, since the area was posted at a speed of 25 miles per hour.

Appellant's determination of the speed of the vehicle is derived from a consideration of the car's speed during the last 47 feet it traveled. On the other hand, respondent introduced evidence that the decedent was not speeding and argues that at a speed of twenty-five miles an hour the force applied to the left front wheel when it struck the barrier furnished 6.4 times the energy necessary to fracture the steering mechanism. This, then, coupled with the fact that the automobile was proceeding down a hill with a grade of 5 to 7 per cent and the fact that a sudden upward jolt on the car could have caused the driver to inadvertently press down the accelerator pedal, is as plausible a reason for the decedent's rate of speed during the last 47 feet as is the appellant's suggested reason.

Appellant relies heavily on the failure of the respondent to file a timely claim under section 228 of the Charter of the City of Lewiston. See Session Laws of 1907, H.B. 121, pages 349, 444 [1].

The section in question provides that before the City of Lewiston shall be liable for any damages for personal injuries, the person injured shall file a notice with the city in writing, giving notice of such injury within 30 days after the same has been sustained. The notice must contain when, where, and how the injury occurred. Failure to notify the City, as provided, exonerates it from any liability whatsoever. In this case, Plaintiff's Exhibit 35 shows that the required notice was not served on the City Clerk until February 17, 1967, which was 12 months and 27 days after the accident. The trial court, in ruling on motions for directed verdict and for judgment n. o. v., refused to consider this requirement of notice as an absolute defense, and refused to submit the question to the jury. Appellant argues that the timely filing of a claim is a condition precedent to the right to maintain an action against a municipal corporation and that minority or disability does not excuse a failure to file such a claim. Of course, it is to be noted, that the real plaintiffs in interest in this case are, in fact, minors.

Whether Lewiston's provision is construed as creating a condition precedent to suit or as creating a statute of limitations which would be raised by affirmative de-

[1]. Sec. 228. Before the city of Lewiston shall be liable for damages for personal injuries of any kind, the person injured or some one in his behalf shall by filing notice with the city clerk give notice in writing of such injury within thirty days after the same has been sustained, stating in such notice, when, where and how the injury occurred, and the apparent extent thereof, and the failure to so notify the city within the time and manner specified herein shall exonerate, excuse and exempt the city from any liability whatsoever.

fense is of no consequence here. The respondent plead compliance with the statute. The issue is whether there was in fact substantial compliance.

There is no doubt that a requirement that a city be given notice within a short period of an accident under penalty of losing the cause of action, creates harsh results. This is particularly so when such laws are city ordinances which inherently have limited publication and are rarely uniform. Notice periods range from one week to a year. It has even been held that notice of a defective condition must be given two days *before* the injury in order to hold a city liable. See Fullerton v. Schenectady, 309 N.Y. 701, 128 N.E.2d 413 (1955). Thus it is easy for a plaintiff with an otherwise good cause of action to overlook those statutes. Such laws have been held to constitute an unjust discrimination, e. g., Woods v. City of Palatka, 63 So.2d 636 (Fla.1953); to be applicable only to contract claims, e. g., Griffin v. City of Lewiston, 6 Idaho 231, 55 P. 545 (1898); to be tolled by minority or other disability, see Annot., 34 A.L.R.2d 725 (1954) and frequently, to be inapplicable where injury causes death, 18 McQuillin, Municipal Corporations 566 (Rev.3d ed. 1963); Annot., 51 A.L.R.2d 1128 (1957).

On the other hand, there are significant reasons why the vitality of these notice statutes must be preserved. Many "cities" particularly in Idaho, are so small that a sudden, large demand on their treasuries would be ruinous. Notice requirements give the cities some additional time to liquidate a liability. Also, such a statute gives the city time to negotiate an amicable accord with an injured party. Probably the most compelling reason for the existence of such statutes, however, is to give a municipality time to investigate a claim, determine its merits, and prepare a defense if necessary.

Both parties urge us to accept a "strict" construction of Lewiston's notice statute. However, we do not believe that either party would be totally satisfied with a most literal interpretation, for, on the one hand, the literal language of the law would indicate that wrongful death actions are not within the scope of the provision. On the other hand, the same literal reading of the statute would absolutely preclude a cause of action if a plaintiff were comatose or otherwise incapacitated for 30 days and unable to give the notice.

■ Rather than merely reiterating the language of this statute, thus avoiding judicial function, or adopting specious distinctions, we adhere to the universal rule of statutory construction that a statute must be construed in light of its intent and purpose. Keenan v. Price, 68 Idaho 423, 438, 195 P.2d 662 (1948) (also citing Chandler v. Lee, 1 Idaho 349, 351 (1870)). See also Knight v. Employment Sec. Agency, 88 Idaho 262, 398 P.2d 643 (1965); Bush v. Oliver, 86 Idaho 380, 386 P.2d 967 (1963); Messenger v. Burns, 86 Idaho 26, 382 P.2d 913 (1963); In re Gem State Academy Bakery, 70 Idaho 531, 224 P.2d 529 (1950).

■ It is now well-established law in this jurisdiction that the purpose and intent of these notice statutes is two-fold:

(1) to save needless litigation and expense by providing an opportunity for amicable adjustment of the differences between the parties. Giffin v. City of Lewiston, 6 Idaho 231, 55 P. 545 (1898); and

(2) to provide "such information that the authorities may be able to make a full investigation of the cause of the injury and determine the city's liability therefor." Dunn v. Boise City, 45 Idaho 362, 367, 262 P. 507, 509 (1927); Cox v. City of Pocatello, 77 Idaho 225, 234, 291 P.2d 282 (1955); McLean v. City of Spirit Lake, 91 Idaho 779, 782, 430 P.2d 670 (1967); Weaver v. Village of Bancroft, 92 Idaho 189, 439 P.2d 697, 700 (1968).

■ In determining whether the purpose of the statute has been achieved, it must be borne in mind, that "a substantial compliance is all that is required in specifying the time, place, character and cause of

said damage. \* \* \* The object of the statute must be kept in mind, and it should not be given a construction which will defeat the ends of justice." Dunn v. Boise City, supra; Cox v. City of Pocatello, supra; McLean v. City of Spirit Lake, supra; Weaver v. Village of Bancroft, supra.

■■ We hold that there was substantial compliance with the statute in this case and the purposes for which the statute was designed were met. The notice was filed on February 17, 1967, and the complaint was filed on March 31, 1967. The city had a full month in which to seek an amicable adjustment of the matter. Furthermore, and most important, the city had ample actual notice of the "time, place, character and cause" of plaintiff's damage. Both police officers employed by appellant and its engineer were on the scene within hours of the accident, investigating the same. Where the city has had *substantial actual* notice of serious injury to a potential plaintiff, it cannot complain of the plaintiff's failure to follow the letter of the formal requirements of the notice statute. This is particularly so where the real parties in interest are minors and must rely upon others to give the required notice. Lazich v. Belanger, 111 Mont. 48, 105 P.2d 738 (1940).

It must be borne in mind that we are not here dealing with an action such as those arising from a fall caused by a minor sidewalk defect, which incidents often cannot be substantiated outside of the claimant's own testimony. Here there was substantial external evidence of the circumstances of the decedent's accident and all the facts were equally available to both appellant and respondent. Their advantages in gathering evidence were co-equal and they both labored under the disability of Morris Kopf's death and consequent failure of testimony as to the cause of the accident. If the appellant was unduly prejudiced by lack of timely notice, it should have shown the nature of its prejudice.

■ By assignment of error No. 6, appellant raises objection to the giving of Instruction No. 18, which instructed the jury on the presumption of due care. Appellant contends that this instruction is given only where there are no witnesses or external evidence to indicate what the conduct of the decedent might have been immediately prior to the accident. Thus, where the details of the accident are available through eye witnesses or other external evidence, the purpose of the presumption is served and the necessity for the instruction removed. Appellant cites Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964) for this proposition. However, in Dewey v. Keller the decedent was accompanied by a passenger in the car. The defendant was a witness to the accident which involved a collision between the defendant's house, which was stopped on the highway, and the decedent's car. The court therein said:

"[The instruction on the presumption of due care] is properly applied only where there are no witnesses or external evidence to indicate what the conduct of the decedent might have been immediately prior to his death. Where the details of an accident are available through eye witnesses or other external evidence, the purpose of the presumption is served and the necessity for such instruction is removed. [citations]" 86 Idaho at page 518, 388 P.2d at p. 995.

In this case there is no evidence of the decedent's conduct immediately prior to his death or striking the divider. The evidence in this case of what the decedent or his car did after the collision is not sufficient to indicate what his conduct was immediately prior to striking the divider. As this court said in Haman v. Prudential Insurance Co. of America, 91 Idaho 19, 26, 415 P.2d 305 (1966), 312, in discussing an instruction on the analogous presumption against suicide:

"The determination of the jury will not be disturbed on appeal, at least when the evidence submitted in contravention to

the presumption is not so clear, convincing and uncontradicted, or so overwhelming that this court must say that as a matter of law reasonable minds could only reach the conclusion that death was the result of suicide."

■ During the course of the trial appellant called two Lewiston police officers to the stand and attempted to solicit the officers' opinion as to the speed of the vehicle, based on the officers' observation of the scene of the accident, physical damage done to the vehicle, distance traversed, and tire marks left on the pavement after decedent's vehicle struck the divider. The trial court ruled that the officers could not give their opinion based on these facts, particularly the skid marks. Appellant has assigned this ruling as error. We conclude there was no error in the trial court's exclusion of this testimony. This court has previously held that expert testimony, as to rate of speed, cannot be based on the physical condition of the wreck for the reason that such testimony would be conjectural. See Faris v. Burroughs Adding Machine Co., 48 Idaho 310, 323, 282 P. 72 (1929). The evidence which formed the basis of the offered testimony would only be competent to show the speed of the automobile *after* its collision with the concrete triangle. The evidence did not take into account the significance of the previous collision so as to make the proposed opinion relevant to the speed of the automobile prior to the collision.

■ Appellant also objects to the court's refusal to admit defendant's Exhibit E which was a picture of the illumination available at the intersection in question. The picture was taken 8 or 9 months after the accident. It was taken by a professional news photographer who testified that the picture accurately portrayed the scene depicted and an officer of the Lewiston City Police testified that the exhibit was a fair representation of the illumination available on the night of the accident. Both parties cite McKee v. Chase, 73 Idaho 491, 501, 253 P.2d 787, 792 (1953). In that case this court said that photographs are generally admissible "where they are not of such a character as to render the photograph deceptive." The photograph in question was taken several months after the accident at twilight or a little darker with a 15 second exposure. Respondent contends that the picture was taken from a deceptively elevated position which could not demonstrate the illumination available to the operator of the vehicle. An examination of the exhibit itself indicates that the picture was taken from the opposite side of the road from which the decedent was traveling. Since the photograph was offered to show the illumination available to the decedent, and since it was not taken in the position decedent's car would have been in, we cannot hold that the trial court abused its discretion in refusing to admit the picture. Virginian Ry. Co. v. Armentrout, 166 F.2d 400 (4th Cir. 1948); Commonwealth v. Boden, 399 Pa. 298, 159 A.2d 894, 88 A. L.R.2d 223 (1960).

Appellant assigns as error Instruction No. 19, which was:

"The [statute of] the State of Idaho requires that a municipality must have obtained the approval of a licensed engineer prior to the erection [or] installation of the intersection in question."

The statute referred to is I.C. § 54–1218 [2],

2. "54–1218. Public work.—After the 1st day of January, 1940, it shall be unlawful for this state, or for any county, city, village, school district, irrigation district, drainage district, highway district, or other subdivision of the state, having power to levy taxes or assessments against property situated therein, to engage in the construction of any public work involving professional engineering unless the plans and specifications and estimates have been prepared by, and the construction executed under the direct supervision of, a registered professional engineer; provided, that nothing in this section shall be held to apply to any public work wherein the contemplated expenditure for the completed project does not exceed two thousand dollars ($2,000.00), if the public health or safety is not involved in

which appellant contends is primarily concerned with fiscal matters. Appellant argues that the giving of Instruction No. 19 together with Instruction No. 13, which instructed the jury on negligence per se, created an "unreasonable" impression in the mind of the jury that unless plans were drawn by a licensed engineer it would be negligence per se.

 The answer to this assignment of error is that it *was* negligence per se to have unauthorized personnel draft the "plans" for this intersection. In arguing that I.C. § 54–1218 is a fiscal statute, appellant overlooks I.C. § 54–1201 which declares the policy of the act:

> *"To safeguard life, health and property, every person practicing* or offering to practice *professional engineering* or land surveying, as herein defined, *shall* submit evidence of his qualifications and *be registered* as hereinafter provided; * * "* (emphasis added)

such work and provided further that from the effective date of this act until the 1st day of January, 1940, such plans, specifications and estimates may be prepared by and the construction executed under the supervision of persons having the qualifications required by law now in force and relating to such matters."

3. COURT'S INSTRUCTION No. 21

You are instructed that it is unlawful and therefore negligence per se to obstruct a highway or to leave thereon any impediment or obstruction which might block traffic or cause injury or damage to a traveler on the highway, unless the obstruction or impediment is plainly marked with an adequate warning device at the point of danger sufficiently visible to prevent collision therewith.

4. COURT'S INSTRUCTION No. 22

I instruct you that in the City of Lewiston a traveler upon a public street has the right to assume that the right-of-way is as safe and free from danger as the ordinary public highway. It is not the duty of such traveler to expect to maintain a lookout for unusual highway hazards, such as deep depressions or as obstructions or the like. Such a traveler has a right to expect that any such depressions or obstructions will be signed or marked so as to warn an ap-

Appellant also contends that I.C. § 54–1218 does not apply to the City of Lewiston which is a charter city. Appellant is apparently relying on a provision of the charter which states as follows:

> "No general law of the State or any amendment that may be made thereto, shall have the effect to repeal, alter or amend this charter or any provisions thereof, when inconsistent therewith unless the act, enacting said laws, clearly expresses such intention by reference to said charter by title."

However, the City of Lewiston cannot use its charter to avoid setting any professional standards whatsoever. The standards set by I.C. § 54–1218 do not conflict with Lewiston's charter, but rather they complement the charter.

 Appellant objects to the giving of Instructions Nos. 21 [3], 22 [4], 23 [5], 25 [6], and 25A [7]. Appellant contends that these in-

proaching traveler. In the absence of such signs or warnings, a traveler has a right to assume the roadway to be safe from anything except the usual traffic hazards.

5. COURT'S INSTRUCTION No. 23

I instruct you that the type or character of warning signs and devices which should be used by the City of Lewiston on its streets for traffic control should be adapted or suitable for the purpose of preventing or minimizing injury or damage.

6. COURT'S INSTRUCTION No. 25

It is the duty of those in charge of an obstruction or dangerous condition upon a public highway to mark it and place warning signs or signals to give ample notice to travelers upon the highway of the obstruction; that in the absence of such warnings or signs, the travelers have a right to assume the roadway to be safe and free from all except the usual traffic hazards.

7. COURT'S INSTRUCTION No. 25A

It is a well established rule that persons using a public highway which is in constant use, and when their attention has not been called to any obstructions or peril thereon, have a right to assume, and act upon the belief, that the way is

structions were unduly repetitive, and placed unwarranted emphasis on the evidence; failed to define "obstruction"; assumed the existence of an obstruction; tended to imply that the city was an insurer of the safety of travelers on the highway; and failed to explain that the city's duty would extend only to travelers exercising due care. Appellant particularly objects to these instructions when, as appellant contends, the northbound lanes were free and unobstructed. This latter statement by appellant is questionable. It would appear from the exhibits that this triangle *was in fact* in a northbound lane. For that matter, it was likewise in the southbound lane. It was designed to channel northbound traffic left and to channel southbound traffic right. We find that these instructions fairly deal with the issues in this case and well state the applicable law, particularly when read in conjunction with other instructions which were given.

"The jury will be presumed to have considered the instructions as a whole; consequently, on appeal, jury instructions will not be considered piecemeal.

[citations]" Blaine v. Byers, 91 Idaho 665, 674, 429 P.2d 397, 406 (1967).

Next, by assignments of error. Nos. 13 and 22, appellant objects to the admissibility of portions of the Manual of Uniform Traffic Control Devices for Streets and Highways. The Manual constituted Plaintiff's Exhibits 31 a through e. Appellant contends this manual was irrelevant because it discussed obstructions to the flow of traffic and did not discuss center line dividers. Plaintiff further objects to the admission of this exhibit and Instruction No. 24 [8] on the grounds that they imply that a failure to follow the letter of the manual constituted negligence as a matter of law. At most, appellant contends, the exhibit may have been admissible to establish a standard of practice, but the court's instructing upon it lent it a credence beyond that to which it was entitled.

Appellant's contention on the status of the Manual on Uniform Traffic Control Devices For Streets and Highways (U. S. Department of Commerce, June 1961) is not well taken. Under I.C. § 49–603 [9], local authorities must comply with state requirements. I.C. § 49–601 [10] requires

---

reasonably safe for ordinary travel, whether they are traveling at night or in the daytime. Such persons are not bound to anticipate unusual dangers when there is nothing to put them on guard or notice.

8. COURT'S INSTRUCTION No. 24

I instruct you that the laws of Idaho provide that the department of highways shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this Act for use upon highways within this State. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American association of state highway officials.

(a) The department of highway shall place and maintain such traffic-control devices, conforming to its manual and specifications, upon all state highways as it shall deem necessary to indicate and to carry out the provisions of this act or to regulate, warn, or guide traffic.

Local authorities in their respective juris-

dictions shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this act, or local traffic ordinances, or to regulate, warn, or guide traffic. All such traffic-control devices shall conform to the manual and specifications adopted by the State of Idaho.

9. 49–601. Department of highways to adopt sign manual.—The department of highways shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within this state. Such uniform system shall correlate with and so far as possible conform to the system then current as approved by the American Association of State Highway Officials.

10. 49–603. Local traffic-control devices.— Local authorities in their respective jurisdictions shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem

that the department of highways adopt a manual for a uniform system of traffic controls which complies with the system approved by the American Association of State Highway Officials. The system approved by that body is incorporated in the manual in question and has been specifically adopted by the Idaho State Department of Highways.[11] This manual has the force of law and failure to comply with it is negligence per se. Anderson v. Blackfoot Livestock Commission Co., 85 Idaho 64, 375 P.2d 704 (1962).

Appellant objects to the court's failure to give Defendant's Requested Instructions Nos. 3, 5, 7, 8, 11, 13, 16 and 19. Appellant contends that the jury was not adequately instructed on the duty of the defendant to exercise due care, which appellant contends would have been accomplished by requested instructions. The decedent's duty was adequately covered by instructions numbers 12, 13, 14, 16, 28, 29, 32, and 33. Where the instructions given properly cover all the points in the rejected instructions, it is not error for the court to refuse requested instructions. E. g., State v. Gonzales, 92 Idaho 152, 438 P.2d

897 (1968); State v. Oldham, 92 Idaho 124, 438 P.2d 275 (1968); State v. Carpenter, 92 Idaho 12, 435 P.2d 789 (1967).

By Defendant's Requested Instruction No. 23, appellant sought to have the jury instructed on the lateness of the filing of Plaintiff's Claim of Injury. This instruction was properly refused because it sought to instruct the jury on a matter which was a question of law for the court alone to decide. See In re Eggan's Estate, 86 Idaho 328, 335, 386 P.2d 563 (1963), wherein the court stated:

"According to appellant's theory the jury was to pass upon questions of law reserved to the court; this the trial court properly declined to do."

See also Alpert v. Greenlee, 65 Idaho 547, 148 P.2d 777 (1944).

Finally, appellant argues that $50,000.00 in damages was excessive to the point of an abuse of discretion by the jury. Particularly so, appellant maintains, when the decedent was out of work at the time of the accident. However, this award amounted to only $7,142.00 per child, considerably less per child ($4,000.00 less)

---

necessary to indicate and to carry out the provisions of this act, or local traffic ordinances, or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications referred to in section 49–601.

11. 103—Uniform Manual of Traffic Control Devices for Streets and Highways was approved by the Board as reflected in new revised manual dated September 19, 1961.
WHEREAS, Section 49–601 does authorize and direct the Idaho Department of Highways to adopt a "Manual and Specifications for a Uniform System of Traffic Control Devices" for use upon highways with the State, and,
WHEREAS, such uniform system is required to correlate with and so for as possible conform to the system then current as approved by the American Association of State Highway Officials, and,
WHEREAS, the Uniform Manual of Traffic Control Devices for Streets and Highways, dated August 1948 and revised September 1954, approved by Minute Entry of the Board of Highway Directors dated May 19, 1955, has recently been revised and supplemented by a new publication dated June 1961.
NOW THEREFORE, it is hereby ordered that the Minute Entry of the Board of Highway Directors, dated May 19, 1955, pertaining to the Uniform Manual of Traffic Control Devices for Streets and Highways is herewith rescinded.
IT IS FURTHER ORDERED, that the Manual of Uniform Traffic Control Devices for Streets and Highways compiled and published by the National Joint Committee on Uniform Traffic Control Devices consisting of the American Association of State Highway Officials, the Institute of Traffic Engineers, the National Committee on Uniform Traffic Laws and Ordinances, the National Association of County Officials, the American Municipal Association, dated June 1961, be and the same is hereby adopted as the "Manual and Specifications for a Uniform System of Traffic Control Devices" for the Idaho Department of Highways.— 9/19/61

than was approved by this court only last December in the case of Matteson v. Bryan, 92 Idaho 587, 448 P.2d 201 (1968). Furthermore, although the decedent was unemployed at the time of his death, and separated from his wife, he was current in his child support payments of $300.00 per month. The award cannot be deemed excessive.

Judgment affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, DONALDSON and SHEPARD, JJ., concur.