DiCesare v. Charlotte-Mecklenburg Hosp. Auth., 2019 NCBC 13.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 16404

CHRISTOPHER DICESARE; JAMES
LITTLE; and DIANA STONE,
individually and on behalf of all others
similarly situated,

Plaintiffs,

v.

THE CHARLOTTE-MECKLENBURG
HOSPITAL AUTHORITY, d/b/a
CAROLINAS HEALTHCARE
SYSTEM,

Defendant.

**ORDER AND OPINION ON
MOTION FOR JUDGMENT ON THE
PLEADINGS AS TO DEFENDANT'S
SEVENTH DEFENSE TO ALL CLAIMS
AND PLAINTIFFS' REMAINING
CONSTITUTIONAL CLAIM**

1. **THIS MATTER** is before the Court on Defendant Charlotte-Mecklenburg Hospital Authority's Motion for Judgment on the Pleadings as to Defendant's Seventh Defense to All Claims and Plaintiffs' Remaining Constitutional Claim (the "Motion") brought pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** the Motion.

*Elliot Morgan Parsonage, PLLC, by R. Michael Elliot; Lieff Cabraser Heimann & Bernstein, LLP, by Brendan P. Glackin, Adam Gitlin, Dean M. Harvey, Abbye R. Klamann, Kathleen Konopka, and Daniel Seltz; and Pearson, Simon & Warshaw, LLP, by Bruce L. Simon, Alexander Lee Simon, Benjamin E. Shiftan, and Daniel L. Warshaw, for Plaintiffs.*

*Womble Bond Dickinson (US) LLP, by James P. Cooney III, Debbie W. Harden, Russ Ferguson, Michael P. Fischer, Brian A. Hayles, Mark J. Horoschak, Sarah Motley Stone, and Matthew Felton Tilley; and Boies, Schiller & Flexner LLP, by Hampton Dellinger, Richard Alan Feinstein, and Nicholas Adrian Widnell, for Defendant.*

Robinson, Judge.

## I. INTRODUCTION

2.  This proposed class action arises out of provisions in contracts between Defendant Charlotte-Mecklenburg Hospital Authority ("Defendant") and insurance companies that allegedly reduce competition in the Charlotte area, increase the price of health insurance and healthcare services, reduce the number of health insurance plans available, and prevent access by consumers to truthful information about the cost and quality of Defendant's services as compared to other providers.

3.  Plaintiffs bring two claims against Defendant: (1) contract, combination, or conspiracy in restraint of trade in violation of N.C. Gen. Stat. §§ 75-1 and 75-2 (the "Restraint of Trade Claim"); and (2) monopolization in violation of Article I, Section 34 of the North Carolina Constitution and N.C. Gen. Stat. §§ 75-1.1, 75-2, and 75-2.1 (the "Monopolization Claim"). Defendant seeks judgment as a matter of law on all of Plaintiffs' claims under Chapter 75 of the North Carolina General Statutes ("Chapter 75"). As to those claims, Defendant argues that, as a quasi-municipal corporation, Defendant is not subject to liability under Chapter 75. Second, Defendant contends that judgment is proper on the Monopolization Claim because Plaintiffs have failed to allege facts sufficient to show that Defendant has a monopoly over hospital services in the Charlotte area, and have, conversely, alleged facts that affirmatively defeat such a claim.

## II.    PROCEDURAL BACKGROUND

4.    The Court sets forth only that procedural background relevant to its determination of the Motion.

5.    On September 9, 2016, Plaintiff Christopher DiCesare ("DiCesare") initiated this action by filing the Complaint "individually and on behalf of all others similarly situated." (ECF No. 1.) The case was designated as a mandatory complex business case by order of the Chief Justice of the Supreme Court of North Carolina dated October 5, 2016, (ECF No. 8), and assigned to the undersigned on October 6, 2016, (ECF No. 9). Thereafter, on August 8, 2018, DiCesare, joined by Plaintiffs James Little ("Little"), Diana Stone ("Stone"), and Kenneth Fries ("Fries")[1] filed a Third Amended Complaint, (ECF No. 116).

6.    On August 14, 2018, Defendant filed its Answer to Third Amended Complaint ("Answer"), (ECF No. 122), and that same day filed the instant Motion and brief in support, (ECF Nos. 123, 124). Defendant's Answer included as its Seventh Affirmative Defense that, based upon the Court of Appeals' recent decision in *Badin Shores Resort Owners Ass'n v. Handy Sanitary Dist.*, 811 S.E.2d 198 (N.C. Ct. App. 2018), it is not subject to liability under Chapter 75. On September 18, 2018, Plaintiffs filed their Memorandum in Opposition to Motion for Judgment on the Pleadings. (ECF No. 183.) On October 10, 2018, Defendant filed its reply

---

[1] On October 10, 2018, Fries filed his notice of voluntary dismissal without prejudice. (ECF No. 192.) However, Plaintiffs did not move to amend their complaint again; therefore, the Third Amended Complaint is the governing pleading to this Motion.

memorandum. (ECF No. 191.) The Court held a hearing on the Motion on December 17, 2018 at which all parties were represented by counsel.

7. The Motion is ripe for determination.

## III.  FACTUAL BACKGROUND

8. The Court does not make findings of fact on a motion for judgment on the pleadings pursuant to Rule 12(c), but only recites those factual allegations that are relevant and necessary to the Court's determination of the Motion.[2]

9. Defendant is a North Carolina, non-profit corporation providing healthcare services with its principal place of business in Charlotte, North Carolina. (Third Am. Compl. ¶¶ 1, 12, ECF No. 116 ["Compl."]; Answer to Third Am. Compl. ¶¶ 1, 12, ECF No. 122 ["Answer"].) It conducts business primarily through Carolinas Medical Center, a large general acute-care hospital located in downtown Charlotte. (Compl. ¶ 12; Answer ¶ 12.) Defendant was established pursuant to the North Carolina Hospital Authorities Act ("Hospital Authorities Act" or the "Act"), N.C. Gen. Stat. § 131E-15, *et seq*. (*See* Answer Ex. 1.)

10. Little and Stone are citizens and residents of the State of North Carolina. (Compl. ¶¶ 9−10.) DiCesare is a citizen and resident of the State of New York, but previously resided and worked in Mecklenburg County, North Carolina. (Compl. ¶ 8.)

---

[2] The Factual Background set forth herein is based on the factual allegations in the Third Amended Complaint, which are taken as true along with matters of public record about which the Court may properly take notice. All contravening assertions in Defendant's Answer are taken as false.

11.     Beginning before 2013, DiCesare was insured under a Preferred Provider Organization ("PPO") health insurance plan offered by Cigna Healthcare of North Carolina, Inc. ("Cigna").  (Compl. ¶ 8.)  DiCesare paid premiums to Cigna through 2017 and has received medical care from Defendant.  (Compl. ¶ 8.)

12.     Little is a retired federal employee and is insured under a PPO health insurance plan offered by Blue Cross and Blue Shield of North Carolina ("BCBS").  (Compl. ¶ 9.)  Little pays premiums to BCBS and is seen regularly at Defendant's facilities.  (Compl. ¶ 9.)

13.     Between 2013 and 2015, Stone was insured under a PPO health insurance plan offered by United HealthCare of North Carolina through her employer.  (Compl. ¶ 10.)  Stone paid premiums for her coverage between 2013 and 2015 and has received medical care from Defendant.  (Compl. ¶ 10.)

14.     Beginning in 2013, Defendant, by far the largest provider of in-patient hospital services in the Charlotte area, began imposing restrictions in its contracts with insurers in order to protect itself from price competition.  (Compl. ¶ 36.)  Four insurers provide coverage to more than eighty-five percent (85%) of the commercially-insured residents of the Charlotte area.  (Compl. ¶ 44.)  In its contract with each of these four insurers, Defendant maintains and enforces restrictions that prevent the four insurers from "steering" their insureds to lower cost providers of medical care services.  (Compl. ¶ 45.)  For years insurers have tried to negotiate the removal of the contract restrictions preventing them from encouraging their insureds to utilize lower

cost alternatives to Defendant's facilities but have been unable to do so because of Defendant's market power. (Compl. ¶ 34.)

15. Defendant's closest competitor by size is Novant Health, Inc. ("Novant"), which owns five general acute-care hospitals in the Charlotte area. (Compl. ¶ 30; Answer ¶ 30.) CaroMont Regional Medical Center ("CaroMont") is the third-largest hospital in the Charlotte area. (Compl. ¶ 30; Answer ¶ 30.)

16. As a result of the contract restrictions in issue, Defendant's competitors have less incentive to remain lower priced and be more efficient. (Compl. ¶ 43.) According to Plaintiffs, the contract restrictions thereby

> lessen competition between [Defendant] and the other providers of acute inpatient hospital services in the Charlotte area that would, in the absence of the restrictions, likely reduce the prices paid for such services by insurers . . . . As a result of this reduced competition due to [Defendant's] steering restrictions, individuals and employers such as Plaintiffs in the Charlotte area pay higher prices for health insurance coverage, have fewer insurance plans from which to choose, and are denied access to consumer comparison shopping and other cost-saving innovative and more efficient health plans that would be possible if insurers could steer freely. Deprived of the option to benefit from choosing more cost-efficient providers, Charlotte area patients also incur higher out-of-pocket costs for their healthcare.

(Compl. ¶¶ 47–48.)

17. Plaintiffs allege that the contract restrictions have had, and will continue to have, anticompetitive effects in the relevant market. (Compl. ¶¶ 53, 59.)

## IV. LEGAL STANDARD

18. "A motion for judgment on the pleadings should not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Carpenter v. Carpenter*, 189 N.C.

App. 755, 761, 659 S.E.2d 762, 767 (2008); *see also Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974). The function of Rule 12(c) "is to dispose of baseless claims or defenses when the formal pleadings reveal their lack of merit." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499. "A motion for judgment on the pleadings is allowable only where the pleading of the opposite party is so fatally deficient in substance as to present no material issue of fact . . . ." *George Shinn Sports, Inc. v. Bahakel Sports, Inc.*, 99 N.C. App. 481, 486, 393 S.E.2d 580, 583 (1990).

19. "[T]he court cannot select some of the alleged facts as a basis for granting the motion on the pleadings if other allegations, together with the selected facts, establish material issues of fact." *J. F. Wilkerson Contracting Co. v. Rowland*, 29 N.C. App. 722, 725, 225 S.E.2d 840, 842 (1976). The Court must read the pleadings in the light most favorable to the nonmoving party, and

> [a]ll well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion.

*Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 (citations omitted).

## V. ANALYSIS

20. The Third Amended Complaint asserts two claims: the Restraint of Trade Claim and the Monopolization Claim. (Compl. 14–17.) Defendant seeks judgment on the pleadings as to both claims, arguing first that, as a quasi-municipal corporation, Defendant is exempt from suit pursuant to Chapter 75. (Mot. for J. on

Pleadings as to Def.'s Seventh Defense & Plaintiffs' Remaining Con. Claim 1, ECF No. 123 ["Mot."].)

21. Second, Defendant argues that it is entitled to judgment as a matter of law on the Monopolization Claim to the extent it is brought pursuant to Article 1, Section 34 of the North Carolina Constitution ("Section 34") because Plaintiffs have failed to allege facts sufficient to state a claim for violation of Section 34, and, rather, have alleged facts that affirmatively defeat such a claim. (Mot. 2.) In Defendant's view, to be liable for a violation of Section 34, Defendant must be an absolute monopolist controlling 100% of the relevant market. (Mem. Supp. Mot. for J. on Pleadings as to Def.'s Seventh Defense & Plaintiffs' Remaining Con. Claim 14–17, ECF No. 124 ["Def.'s Mem. Supp."].)

22. With respect to Defendant's Chapter 75 argument, Plaintiffs contend that Defendant is not a quasi-municipal corporation; that, regardless, this determination is a factual question that cannot be decided upon the pleadings; and that the law does not provide that all quasi-municipal corporations categorically enjoy exemption from Chapter 75. (Pls.' Mem. Opp'n to Mot. for J. on Pleadings 5–16, ECF No. 183 ["Pls.' Mem. Opp'n."].) With respect to Defendant's constitutional argument regarding Section 34, Plaintiffs assert that Defendant need not be a total monopolist for liability to attach. (Pls.' Mem. Opp'n 17.)

A.   Plaintiffs' Claims Pursuant to Chapter 75

23. Defendant seeks judgment on the pleadings as to the Restraint of Trade Claim, and the Monopolization Claim to the extent it is based on an alleged violation

of Chapter 75, in light of the Court of Appeals' recent decision in *Badin Shores,* 811 S.E.2d 198. Defendant argues that, prior to *Badin Shores*, our appellate courts consistently held that Chapter 75 was not intended to create a private right of action against the State and its political subdivisions, and that *Badin Shores* extended that exemption to quasi-municipal corporations. (Def.'s Mem. Supp. 1.) Defendant alleges in its Answer, and argues in support of the Motion, that it is a quasi-municipal corporation and is thus not subject to Chapter 75. (Answer 2, 16; Def.'s Mem. Supp. 1, 5–12.) In response, Plaintiffs argue that *Badin Shores'* holding was limited to the facts of that specific case, that Defendant is not a quasi-municipal corporation, and that governmental immunity is a factual question that cannot be resolved at the Rule 12(c) stage of the proceedings. (Pls.' Mem. Opp'n 6–9, 13–15.)

24. *Badin Shores* is the latest appellate court decision in a string of North Carolina cases interpreting whether the State and its political subdivisions may be sued under Chapter 75. In *Sperry Corp. v. Patterson*, 73 N.C. App. 123, 125, 325 S.E.2d 642, 644–45 (1985), our Court of Appeals first held that a plaintiff cannot bring suit against the State pursuant to Chapter 75 based on the express language of the statute. The Court reasoned:

> The consumer protection and antitrust laws of Chapter 75 of the General Statutes do not create a cause of action against the State, regardless of whether sovereign immunity may exist. G.S. 75-16 authorizes a civil action by a person or business who has been injured in violation of Chapter 75 against the 'person, firm, or corporation' causing the injury. The State of North Carolina is not a 'person, firm, or corporation' within the meaning of G.S. 75-16, so plaintiff has not stated a claim against the State for which relief can be granted . . . . Thus, the G.S. 75-1.1 claim against defendants in their official capacity must be dismissed[.]

*Id.*

25.     Following *Sperry*, the Court of Appeals determined that *Sperry*'s holding extended to cities, holding that "as an agency of the State, a city may not be sued under Chapter 75." *Rea Constr. Co. v. City of Charlotte*, 121 N.C. App. 369, 370, 465 S.E.2d 342, 343 (1995).  Four years later, in *Stephenson v. Town of Garner*, 136 N.C. App. 444, 448, 524 S.E.2d 608, 612 (1999), the Court of Appeals affirmed dismissal of a Chapter 75 claim brought against a town, citing to *Sperry* and *Rea*.

26.     Then, in *Badin Shores*, the Court of Appeals addressed whether quasi-municipal corporations, as extensions of the State, are also exempt from suit under Chapter 75 in light of *Sperry* and its progeny.  *See Badin Shores*, 811 S.E.2d 198. There, the Court concluded:

> We have previously held that 'the consumer protection and antitrust laws of Chapter 75 of the General Statutes do not create a cause of action against the State, regardless of whether sovereign immunity may exist.' We conclude that, regardless of whether [defendant] is entitled to sovereign immunity, as a quasi-municipal corporation it cannot be sued for unfair and deceptive trade practices.

*Id.* at 210 (quoting *Rea*, 121 N.C. App. at 370, 465 S.E.2d at 343).

27.     Our Supreme Court has not spoken to the exact issue raised by Defendant here.  The Supreme Court's decision in *Madison Cablevision, Inc. v. City of Morganton*, 325 N.C. 634, 386 S.E.2d 200 (1989), a case cited by the parties and decided after *Sperry* but before *Rea*, *Stephenson*, and *Badin Shores*, is inapposite to the circumstances of this case.  In *Madison Cablevision*, the Supreme Court held that a municipality could not be liable under Chapter 75 for engaging in anticompetitive activities that were expressly delegated to it by the legislature.  325 N.C. at 657, 386

S.E.2d at 213. There, the municipality issued a license to a single cable operator, as it was permitted to do by statute. *Id.* 643–45, 386 S.E.2d at 205–06. Our Supreme Court reasoned:

> Because cities are authorized to own and operate cable systems and to prohibit others from doing so without a franchise and are not required to issue franchises, it is clear that the legislature contemplated that there would be situations where private corporations would be displaced by municipal cable systems which would operate without competing franchises being issued. In this situation, *the legislature cannot be presumed to have intended that conduct so clearly authorized could give rise to state antitrust liability* . . . . Where the legislature has authorized a city to act, it is free to carry out that act without fear that it will later be held liable under state antitrust laws for doing the very act contemplated and authorized by the legislature.

*Id.* at 655–57, 386 S.E.2d at 212–13 (emphasis added).

28. While *Madison Cablevision* applied the restraint of trade provisions of Chapter 75 to municipal conduct, which is similar to the allegations and claims brought forth in the Third Amended Complaint, the Court believes that *Madison Cablevision*, properly interpreted, stands for the limited proposition that, where the legislature has contemplated or authorized conduct that could be considered anticompetitive, the legislature did not intend those acting pursuant to their authorization to simultaneously be subject to potential liability under Chapter 75. *See id.* at 657, 386 S.E.2d at 213. Here, the alleged anticompetitive activity is the restrictions in Defendant's contracts with insurers that purportedly protect itself from price competition. The Court's review of the record and the Hospital Authorities Act does not indicate that Defendant was explicitly authorized by the legislature to

include these restrictions in its contracts with insurers. Accordingly, *Madison Cablevision* does not control the Court's analysis.

29. Thus, in the absence of contrary authority from the Supreme Court, *Badin Shores* controls this Court's decision. *See Bacon v. Lee*, 353 N.C. 696, 712, 549 S.E.2d 840, 851–52 (2001) ("A primary goal of adjudicatory proceedings is the uniform application of law. In furtherance of this objective, courts generally consider themselves bound by prior precedent, *i.e.*, the doctrine of *stare decisis*."). Nothing in the *Badin Shores* opinion appears to limit its holding to the factual scenario presented in that case. Rather, citing to *Rea* and *Sperry*, the court noted, without qualification, that the provisions of Chapter 75 "do not create a cause of action against the State . . . ." *Badin Shores*, 811 S.E.2d at 210 (quoting *Rea*, 121 N.C. App. at 370, 465 S.E.2d at 343), and that "as a quasi-municipal corporation, [the defendant] cannot be sued [for a violation of Chapter 75]. . . ." *Id.* As such, the Court concludes that if Defendant is a quasi-municipal corporation, it is not subject to Chapter 75.[3]

30. The Court next turns to whether Defendant is a quasi-municipal corporation as a matter of law. Central to that determination are the facts taken as true in the pleadings under the applicable legal standard and the relevant provisions

---

[3] The Court notes that while *Badin Shores* involved an unfair and deceptive trade practices claim, the court's holding encompasses all provisions of Chapter 75. *Rea* and *Sperry*, which the *Badin Shores*' court cites to, were based on Section 75-16, the remedial section of Chapter 75 that equally applies to all provisions of Chapter 75. *See* N.C. Gen. Stat. § 75-16; *see also Sperry*, 73 N.C. App. at 125, 325 S.E.2d at 644–45 ("The State of North Carolina is not a 'person, firm, or corporation' within the meaning of G.S. 75-16, so plaintiff has not stated a claim against the State for which relief can be granted . . . .").

of the Hospital Authorities Act.[4]    Plaintiffs allege that Defendant is "the nation's second largest supposedly 'public' hospital system." (Compl. ¶ 1.) Defendant admits that it is a public hospital system, "established by the General Assembly and organized by local government," and that it is a "non-profit and quasi-municipal governmental organization working in the public interest." (Answer ¶ 1.) While Plaintiffs appear to question whether Defendant is a public corporation by putting quotation marks around "public" in the Third Amended Complaint, the Court is not required to find this a disputed factual issue if it is clear, on the face of the Hospital Authorities Act and the exhibits taken from the public record attached to Defendant's Answer, that Defendant is in fact a public corporation. *See Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499 ("All allegations in the nonmovant's pleadings, *except conclusions of law, legally impossible facts,* and matters not admissible in evidence at the trial, are deemed admitted . . . ." (emphasis added)).

31.    Exhibit 1 to Defendant's Answer is Defendant's Certificate of Incorporation, which states that Defendant is "duly incorporated as a public body and

---

[4] The Court believes that its determination of whether Defendant is a quasi-municipal corporation is a question of law based on statutory construction and Defendant's legal status and is thus not a factual inquiry. Plaintiffs argue that the question of governmental immunity is a fact question. (Mem. Opp'n 13.) Governmental immunity, a subset of sovereign immunity, requires a factual determination as to whether the nature of the alleged wrongdoing constitutes a governmental or proprietary activity, and whether the alleged wrongdoer acted in accordance with a prescribed government function. *See Robinson v. Nash County*, 43 N.C. App. 33, 35, 257 S.E.2d 679, 680 (1979). This analysis, while a factual one, is separate and distinct from the blanket exemption from Chapter 75 liability afforded to government entities in *Sperry* and its progeny. *Sperry* explicitly held that "[t]he consumer protection and antitrust laws of Chapter 75 of the General Statutes do not create a cause of action against the State, *regardless of whether sovereign immunity may exist.*" *Sperry*, 73 N.C. App. at 125, 325 S.E.2d at 644 (emphasis added). Therefore, the Court does not believe the law surrounding the determination of the applicability of the protections provided by governmental immunity is relevant to the determination of this Motion.

a body corporate and politic . . . ." (Answer Ex. 1.) Additionally, the Hospital Authorities Act, passed initially by the North Carolina legislature in 1943 under a different name and different chapter, expressly declares Defendant a "public body and a body corporate and politic." N.C. Gen. Stat. §§ 131E-16(14), 131E-17.

32. The Court concludes that, under *Badin Shores*, this language is dispositive. The sanitary district in *Badin Shores*, like Defendant here, was created pursuant to a state statute, which provided that the "sanitary district board shall be a body politic and corporate . . . ." Similar statutory language appears in the Hospital Authorities Act. "Body politic" has been interpreted by our Supreme Court to "connote[ ] a body acting as a government; *i.e.* exercising powers which pertain exclusively to a government, as distinguished from those possessed also by a private individual or a private association." *Student Bar Ass'n Bd. of Governors v. Byrd*, 293 N.C. 594, 601, 239 S.E.2d 415, 420 (1977).

33. Moreover, the language "body politic and corporate" has been long used in this State to define counties themselves. *See O'Neal v. Jennette*, 190 N.C. 96, 100–01, 129 S.E. 184, 186 (1925) ("Every county is a body politic and corporate, and has the powers prescribed by statute and those necessarily implied by law, and no others; and these powers are exercised by the board of commissioners, or in pursuance of a resolution adopted by them."). The Court therefore concludes that by defining "hospital authority" as a "public body and a body corporate and politic[,]" our legislature intended that hospital authorities organized under the Act were to be treated as quasi-governmental entities. The Court's conclusion finds support in the

fact that Defendant has, among many powers that appear to be quasi-governmental in nature, the power of eminent domain. N.C. Gen. Stat. § 131E-24 ("A hospital authority may acquire by eminent domain any real property . . . which it deems necessary to carry out the purpose of this Part."). Therefore, based upon the express statutory language of the Hospital Authorities Act, the Court concludes that Defendant is a quasi-municipal corporation—a body corporate and politic.

34. Accordingly, consistent with *Badin Shores*, the Court concludes as a matter of law that Defendant is a quasi-municipal corporation exempt from liability pursuant to the provisions of Chapter 75. Therefore, the Motion is GRANTED to the extent it seeks judgment on the pleadings as to Plaintiffs' Restraint of Trade Claim. Accordingly, Plaintiffs' Restraint of Trade Claim is DISMISSED with prejudice.

B.      Plaintiffs' Monopolization Claim

35. For the reasons set forth above regarding Plaintiffs' Restraint of Trade Claim, the Court also finds that Defendant is entitled to dismissal of the Monopolization Claim to the extent it is based on an alleged violation of Chapter 75. However, Plaintiffs' Monopolization Claim is also based on alleged violations of Section 34, which covers Defendant as a quasi-municipal corporation.[5] Defendant seeks judgment on this claim, arguing that Plaintiffs' allegations are both insufficient as a matter of law and when, taken as true, require dismissal. (Mot. 2.)

---

[5] Section 34 only applies to governmental entities. *See Corum v. Univ. of North Carolina*, 330 N.C. 761, 788, 413 S.E.2d 276, 293 (1992) ("The Constitution is intended to protect our rights as individuals from our actions as the government. The Constitution is not intended to protect our rights vis-à-vis other individuals.").

36.     In support of the Motion, Defendant argues that Section 34 does not prohibit governmental actions that merely "reduce" or have an "adverse effect" on competition, but rather only prohibits actions that "eliminate" competition entirely from a given market, and thus amount to an absolute monopoly granted by the government.  (Def.'s Mem. Supp. 13.)  Defendant argues that because Plaintiffs have not alleged that competition has been eliminated in the Charlotte area, (Def.'s Mem. Supp. 17), and, conversely, have alleged that there are other healthcare providers who compete with Defendant for the provision of hospital services in the Charlotte area, (Def.'s Mem. Supp. 13), Defendant is entitled to judgment on the pleadings.

37.     Section 34 provides in relevant part: "monopolies are contrary to the genius of a free state and shall not be allowed."  N.C. Const. Art. I, § 34.  Our Courts have invoked Section 34 to prohibit the government from using legislation to grant exclusive monopolies to private parties.  *See Thrift v. Elizabeth City*, 122 N.C. 31, 35, 30 S.E. 349, 351 (1898); *Rockford-Cohen Grp., LLC v. N.C. Dep't of Ins.*, 230 N.C. App. 317, 320, 749 S.E.2d 469, 472 (2013).

38.     Most applicable to the Court's determination of the Motion in this regard is *American Motor Sales Corp. v. Peters*, 311 N.C. 311, 317 S.E.2d 351 (1985), a case in which our Supreme Court considered Section 34 and its application in the context of legislation affecting intra-brand automobile sales.  There, our Supreme Court defined the "distinctive characteristics of a monopoly [as] . . . (1) control of so large a portion of the market of a certain commodity that (2) competition is stifled, (3) freedom of commerce is restricted and (4) the monopolist controls prices."  *Id.* at 316, 317 S.E.2d

at 356. The Supreme Court concluded that a monopolist for purposes of Section 34 is "an organization or entity so magnified that it suppresses competition and acquires a dominance in the market." *Id.* at 315–16, 317 S.E.2d at 355.

39. In *American Motor Sales*, the Commissioner of Motor Vehicles, after conducting a hearing and making several findings of fact, revoked a Jeep dealership franchise because the North Wilkesboro market area would not support two Jeep dealerships and there was already another Jeep franchise in that area.[6] *Id.* at 312, 317 S.E.2d at 353. The full record on appeal, including the Commissioner's findings of fact, showed that many consumers in the North Wilkesboro market area were actually geographically closer, or "within reasonable range" to Jeep dealerships in the surrounding areas compared to the dealership currently in North Wilkesboro. *Id.* at 317, 317 S.E.2d at 356. As a result, the Supreme Court found that, "while the trading of AMC Jeeps [was] restrained by the statute's operation [and the Commissioner's decision as a result] in this situation, no control of the market or adverse effect on prices and competition, sufficient to constitute a monopoly, result[ed]." *Id.* at 316–17, 317 S.E.2d at 356–57.

40. Defendant argues that *American Motor Sales* stands for the proposition that a Section 34 claim requires allegations that competition in the relevant market has been eliminated. (Def.'s Mem. Supp. 17.) In support of this position, Defendant draws the Court's attention to the Supreme Court's conclusion that "[w]hile competition may not be as full and free as with multiple AMC Jeep franchises existing

---

[6] The statute provided the Commissioner with the authority to revoke a franchise for this reason. *See id.* at 312 n.1, 317 S.E.2d at 353 n.1.

in the North Wilkesboro Market Area, it is by no means eliminated. More than a mere adverse effect on competition must arise before a restraint of trade becomes monopolistic." (Def.'s Mem. Supp. 15 (quoting *Am. Motor Sales*, 311 N.C. at 317, 317 S.E.2d at 356).) Defendant argues that the Third Amended Complaint alleges Defendant has at least two other competitors—Novant and CaroMont—who together operate six other general acute-care hospitals in the Charlotte area, and as a result, the Third Amended Complaint has not alleged that competition has been eliminated in the Charlotte area, but rather has continued. (Def.'s Mem. Supp. 17.)

41. The Court does not read *American Motor Sales* as requiring a plaintiff to plead that all competition has been eliminated in the relevant market area in order to sufficiently allege a Section 34 claim. While the Supreme Court noted that competition had not been eliminated under those specific facts, this statement cannot properly be read to broadly require a plaintiff to plead the complete elimination of competition in the relevant market in order to allege monopolization under Section 34. In fact, *American Motor Sales*' definition of "monopoly" does not foreclose the possibility that a monopolist could exist in an area where competition still exists. Rather, "[a] monopoly results from ownership or control of *so large* a portion of the market for a certain commodity that competition is *stifled*, freedom of commerce is *restricted*, and control of prices ensues." *Am. Motor Sales*, 311 N.C. at 315−16, 317 S.E.2d at 355 (emphasis added). "Eliminated" appears nowhere in this definition, nor are there any other absolute qualifiers such as "total" or "complete"; rather, it is this Court's conclusion that the term "so large" a market could mean less than the

entire market, and "stifled" competition or "restricted" freedom of commerce could allow for some continued yet reduced competition.

42.     Accordingly, the Court does not believe that Plaintiffs have affirmatively alleged facts that defeat their Section 34 claim solely because Plaintiffs allege that there are other smaller competitors in the Charlotte area.  Moreover, Plaintiffs have also alleged that Defendant's "sheer size gives it excessive market power to negotiate contracts with health insurers that restrain competition . . . ." (Compl. ¶ 1.)  Plaintiffs have further alleged, in contrast to the facts in *American Motor Sales*, that "[a]cute inpatient hospital services outside of the Charlotte area are not a reasonable substitute for such services within the Charlotte area."  (Comp. ¶ 27.)  Therefore, unlike *American Motor Sales*, Plaintiffs have alleged that outside-market competitors "would not prevent a hypothetical monopolist provider of acute inpatient hospital services located in Charlotte from profitably imposing small but significant price increases over a sustained period of time." (Compl. ¶ 27.)  The Court concludes that these allegations, considered under Rule 12(c), are different from those in *American Motor Sales*,[7] and sufficient to allege a Section 34 claim.  Accordingly, the Motion is DENIED to the extent it seeks judgment on the pleadings as to the Monopolization

---

[7] The Court also notes that, unlike here, *American Motor Sales* was decided upon a fully developed record.  In another case involving a Section 34 claim, a North Carolina federal district court denied the defendants' Rule 12(c) motion predicated on the argument that *American Motor Sales* required a plaintiff to plead "more than a mere adverse affect [sic] on competition[.]" *Jetstream Aero Services, Inc. v. New Hanover County*, 672 F. Supp. 879, 885 (E.D.N.C. 1987).  The *Jetstream* court concluded that, although the plaintiff did not allege that competition had been eliminated, it was for the jury to determine whether the defendants' "activities constitute a restraint of trade resulting in a monopoly." *Id.* This decision supports the Court's conclusion that dismissal of Plaintiffs' Section 34 at this stage of the proceeding is improper.

Claim pursuant to Section 34, but as noted above is GRANTED to the extent it seeks judgment on the pleadings as to Plaintiffs' Monopolization Claim pursuant to Chapter 75.

## VI. IMMEDIATE APPELLATE REVIEW

43. The Court acknowledges that an appeal from this Order and Opinion would be interlocutory, because it leaves "more to be done in the trial court." *State v. Oakes*, 240 N.C. App. 580, 580, 771 S.E.2d 832, 833 (2015). However, the Court believes that the particular circumstances of this matter warrant immediate appellate review of the Court's judgment if desired by Plaintiffs, at least to the extent it is predicated on this Court's interpretation and application of the Court of Appeals' decision in *Badin Shores*.

44. Pursuant to Rule 54(b), "an interlocutory order can be immediately appealed if the order is final as to some but not all of the claims or parties and the trial court certifies there is no just reason to delay the appeal." *Bartlett v. Jacobs*, 124 N.C. App. 521, 524, 477 S.E.2d 693, 695 (1996); *see also* N.C. Gen. Stat. § 1A-1, Rule 54(b). This Order and Opinion is final as to the Restraint of Trade Claim, and to the Monopolization Claim to the extent it is based on alleged violations of Chapter 75. Further, the Court believes that, without the ability to seek immediate appellate review of this Order and Opinion, the parties must await a final answer on a significant issue until after a final, appealable judgment, which cannot be entered until complex fact and expert discovery, and this Court's determination on class certification, is completed.

45.    The issue of the applicability of Chapter 75 to hospital authorities decided by the Court today has importance beyond this case; it involves an interpretation of whether our Court of Appeals' decision in *Badin Shores* results in an extension of the blanket exemption under Chapter 75 to hospital authorities as quasi-municipal corporations.

46.    For these reasons, if Plaintiffs seek immediate appellate review of this Order and Opinion, the Court certifies there is no just reason to delay the appeal and urges the Supreme Court to docket the appeal.  If such appeal is allowed by the Supreme Court, the Court will exercise its discretion to stay all proceedings in this Court, pending resolution of appellate proceedings.

## VII.    CONCLUSION

47.    For the foregoing reasons, the Court hereby orders as follows:

a. The Motion is **GRANTED** as to the Restraint of Trade Claim.  This claim, therefore, is dismissed with prejudice.

b. The Motion is **GRANTED** as to the Monopolization Claim to the extent it is based on alleged violations of Chapter 75, and to this extent, the Monopolization Claim is dismissed with prejudice.

c. The Motion is **DENIED** as to the Monopolization Claim to the extent it is based on alleged violations of Section 34.

d. Pursuant to Rule 54(b), the Court certifies that there is no just reason to delay an appeal of this Order and Opinion if Plaintiffs seek immediate

appellate review of this Court's dismissal of Plaintiffs' claims under Chapter 75.

**SO ORDERED**, this the 27th day of February, 2019.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases